## Case No. 1,345.

### The BERMUDA.

[23 Leg. Int. 116;[1] 6 Phila. 187.]

District Court, E. D. Pennsylvania. March 31, 1866.

PRIZE—SPOLIATION OF PAPERS—FALSIFIED DESTINATION—PRESUMPTION OF HOSTILE OWNERSHIP.

1. Either spoliation of papers, or falsified destination suffices to induce a legal presumption of hostile ownership.

2. Further proof refused where the destination had been falsified, and papers were, under an apprehension of capture, destroyed in pursuance of previous instructions to do so.

In admiralty. This was the last of the contested prize cases in this district. All the decrees appealed from were affirmed by the supreme court. In this case, the vessel, and the munitions of war composing part of her cargo, were long since condemned. These decrees of condemnation have recently been affirmed. [The Bermuda, 3 Wall. (70 U. S.) 514.] The following opinion of the district court applies to the residue of the cargo [condemned.]

CADWALADER, District Judge. In this case the only question requiring serious consideration was whether further proof should be allowed. This question was more or less complicated with that of the ultimate destination of the cargo. The affirmance of the decrees condemning the vessel, and the munitions of war which composed part of her cargo, has enabled me to give, without the least difficulty, a decision as to the residue of the cargo consisting of general merchandize. I suspended the final disposition of this part of the case until the decision of the supreme court upon the appeal of the claimant of the cannon, because, had further proof been allowed on his part, such proof might possibly have been likewise receivable as to

[1] [Reprinted from 23 Leg. Int. 116, by permission.]

the rest of the cargo. According to my own strong conviction, further proof was altogether inadmissible. But the cannons were, according to his affidavit, to have been landed, at all events, either at Bermuda or at Nassau, and to have been disposed of on his own account at one of those places, without even a contingent ulterior destination. If this had been true, the rest of the cargo must also, according to the plan of the voyage, have been landed at one of those places, because the cannons were below it, forming part of the ballast of the vessel. They could not have been reached until the merchandize generally had been discharged. I did not consider his affidavit, in this respect, credible. I thought there was no doubt whatever that the destination of the vessel was controlled by those who would certainly have determined it for a blockaded port, if there had been a reasonable probability of running the blockade. If his affidavit were disregarded, the proofs were conclusive that the whole of the cargo was absolutely destined for a blockaded port, either directly or by transhipment. It was at least, clearly shown by these proofs that those who controlled the navigation of the vessel could, if they chose, prevent the landing of any part of the cargo at any intermediate place. The only possibility of doubt which I thought conceivable in the mind of any person has been removed by the affirmance of my decree which was founded on the disallowance of further proof on the part of this claimant. Informally he and others had really perhaps been afforded every advantage which could have been derived by them under an express allowance of such proof. During the late hostilities, reasons arising from their peculiar character had induced this court to receive provisionally in the progress of prize cases, almost all evidence which would have been admissable as further proof, except, perhaps, in a very extraordinary case, requiring plenary proofs. Of this practice of the court, parties had in this case availed themselves, and had thus received a benefit to which they were not, in ordinary strictness, entitled. They probably could not have offered any additional evidence under a formal order allowing further proof. To retain the case in this court, seemed, therefore, as to the general merchandize, preferable to a decree of condemnation which would unnecessarily have increased the number of appeals.

The opinion of the supreme court would, I think, require of this court a decree condemning the whole cargo independently of any question of its actual ownership. Such a decree would be conformable to established rules of prize law upon those questions of destination with intended breach of blockade, &c., which the case involves. But the decree may be pronounced, not less properly, upon the question of hostile ownership alone. In the opinion of the supreme court, the destruction of the papers relating to the cargo was an unusually aggravated "spoliation," warranting "the most unfavorable inferences as to ownership." The result must of course be condemnation unless further proof can be allowed. To allow it in such a case would set a trap for the conscience of claimants, tempting them to commit perjury, if not inviting its commission. Further proof is not allowable where, as in the present case, the letters of advice and proprietary documents of a cargo have been destroyed under previous orders to do so rather than to let them be seen by captors or boarders. Such was the plain import of the instructions given to the navigator of this vessel by the persons to whom the absolute control of all the shipments had been confided. That these were persons of well known relations hostile to the United States, might alone suffice to exclude any exception or qualification of the rule against allowing further proof in the case of spoliation of papers under such instructions. The only rational exception from such a rule is in cases of well founded apprehension, by persons truly neutral, of danger of illegal detention or capture. If such cases occurred in the wars of the French revolution, it is to be remembered that, so far as proprietary rights of neutrals were concerned, the commissioned belligerents, French and English, who then swarmed the seas, were scarcely less dangerous than pirates. Like danger, though less in degree, may have been reasonably apprehended in some previous European wars. There certainly was no reason for apprehension of any such danger on the voyage in question. In cases of spoliation of papers, the legal presumption against their destroyer is founded in a rule of common sense. The rule is not by any means peculiar to prize courts. Its application is familiar in courts of equity which administer in this respect the doctrines of general jurisprudence. If the proprietary documents had been preserved they would unquestionably have shown hostile ownership. Direct proof to this effect as to part of the cargo has been furnished by existing papers accidentally discovered in unloading the vessel. As to the rest of the cargo, a moral, not less than a legal inference to the same effect arises from the destruction of the papers. The moral presumption from previous orders to destroy them is indeed too strong to be rebuttable.

If this were less clear, condemnation must inevitably result from the wilful falsification of the destination of the cargo. From this the presumption of hostile ownership is, in a case like the present, conclusive. Here likewise, the rule is to disallow further proof. Should the case of any one consignee or shipper be distinguishable, in any respect, under this head, from the general case of the others, there could be no such special difference in his favor as to screen the goods which he claims. If the falsification by those to whom any such party entrusted the goods was un-

authorized by him, the law affords him a civil remedy against them to recover an indemnity. But the existence of such a recourse cannot exempt the goods from confiscability. The rule that a person is liable for the wrongful acts of his agents applies, under this head, in the administration of prize law. The principle was applied in this case by the supreme court, citing The Ranger, 6 C. Rob. Adm. 126, which was a case of transportation of goods contraband of war. To the same effect is the case of The Mars, Id. 87, 88, where the goods were not precisely of this kind, and the decision was upon the ground of a false destination. In a third case, (Phoenix Ins. Co. v. Pratt, 2 Bin. 308,) there was no question of either false destination or contraband property of any kind. A neutral who was, for the voyage, the general agent for a cargo principally of neutral ownership, was alleged to have covered in his own name, by false papers, other goods of hostile ownership in the same vessel. The opinion of the court was that the whole property of the principal on board of the vessel was liable to condemnation, if such an agent attempted to deceive a belligerent by thus covering property of his enemy. Such an act, when perpetrated by the master so as to involve a forfeiture of the vessel, or of goods on board, is within the definition of barratry. See Earle v. Rowcroft, 8 East, 126. In the present case, those who concocted the falsifications were, so far as they may not themselves have owned the cargo, general agents and managers, in respect of it, for all who were concerned in the voyage. I do not, however, perceive in the case any reason to justify a view so little unfavorable to any one of those on whose behalf the cargo was claimed.

For these reasons, and others which might be stated, the residue of the cargo is condemned. The case does not require the repetition of a remark frequently made, in different forms, in prize courts, that the criterion of hostile ownership is not the same in them as it might be in ordinary tribunals upon a mere question of proprietary right between private persons. A party might be able, in a court of common law, to maintain an action of replevin, or of trover, against a person who, nevertheless, having the commercial control and disposal of the subject of the action, would be deemed the owner in a prize court. A sufficient test of ownership in a prize court is that the goods, on reaching their destination, would have been disposed of, or held, for the profit of persons of hostile residence. Applying this test there can be no doubt that this cargo should be condemned. The previous reasons are, however, perhaps, of more simple application to the case.